UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 2:01 CR 67 |
| ) | |
| ADAM TYRALE WILLIAMS, JR. ) | |

## OPINION and ORDER

In 2001, at the age of 20, defendant Adam Tyrale Williams, Jr., was convicted of: (1) conspiring to distribute more than 50 grams of crack cocaine, 21 U.S.C. § 846 (2000); (2) distributing more than 50 grams of crack, *id*. § 841(b)(1)(A)(iii); and (3) distributing more than five grams of crack, *id.* § 841(b)(1)(B)(iii). As required by the then-mandatory Sentencing Guidelines, Judge Rudy Lozano imposed three concurrent sentences: life imprisonment on Counts 1 and 2, and the statutory maximum 40-year term of imprisonment for Count 3. (DE # 329.)

In 2005, in a separate case, defendant pleaded guilty to serving as an accessory after the fact, for painting the getaway car for associates who robbed and murdered a 71-year-old Hammond gun store owner. (DE # 981, 2:01 CR 73.) In that case, defendant was sentenced to 97 months to be served concurrently with the life sentence in this case. (*Id.*)

Defendant sought to modify his life sentence in this case three times thereafter. In 2009, a retroactively-applicable amendment to the Sentencing Guidelines lowered defendant's base offense level, resulting in a new Guidelines range of 360 months to life. (DE # 360 at 2.) Judge Lozano denied the motion, however, citing defendant's "repeated

acts of perjury, large-scale drug dealing, possession of a firearm, and assistance as an accomplice after the fact in a murder." (DE # 329 at 4.) In 2012, another amendment reduced defendant's Guidelines range to 292 to 365 months, but Judge Lozano denied defendant's motion related to that amendment because "little ha[d] changed." (DE # 360 at 5.) In 2015, another amendment further reduced the applicable Guidelines range to 235 to 293 months. (DE # 397.) This time, Judge Lozano granted a "small reduction" and reduced defendant's sentence to an above-Guidelines term of 360 months. (*Id.*)

In 2018, Congress passed the First Step Act of 2018. This law allows a district court to resentence eligible defendants as if the statutory penalties of the Fair Sentencing Act of 2010, Pub. L. No. 111-220, S. 1789, 111th Cong. (Aug. 3, 2010), were in effect at the time of the original sentencing. The purpose of the First Step Act was "to address disparities between sentences for crack and powder cocaine." *United States v. Shaw,* 957 F.3d 734, 735 (7th Cir. 2020).

In 2019, defendant moved for First Step Act relief. (DE # 453.) This court declined to reduce defendant's term of imprisonment, noting defendant's involvement in a large-scale drug conspiracy, prior acts of perjury, and attempt to cover up a murder in another case. (DE # 473.) The Seventh Circuit Court of Appeals remanded for further explanation regarding the statutory range applicable to defendant; the next day, this court issued an order in compliance with that mandate. (DE # 489.) The Seventh Circuit again remanded, this time for consideration of defendant's new arguments regarding changed circumstances. (DE # 503.) In line with this directive, the court now considers

defendant's new arguments as they relate to his request for relief under the First Step Act.

The parties agree that defendant is eligible for First Step Act relief on Counts 1, 2, and 3. Therefore, the court begins by addressing the relevant modified statutory sentencing boundaries applicable to these counts. *See United States v. Williams,* 32 F.4th 653, 655 (7th Cir. 2022). As applied to defendant, the First Step Act yields statutory ranges of 60 to 480 months imprisonment for Counts 1 and 2, and a maximum of 240 months imprisonment for Count 3. *United States v. Williams,* 93 F.4th 389, 391 (7th Cir. 2024). Further, defendant is subject to a modified Guidelines range of 235 to 293 months imprisonment. *Id.* The court considers this range as a "starting point and . . . initial benchmark." *Peugh v. United States,* 569 U.S. 530 (2013).

Having determined that defendant is eligible for First Step Act relief, the court now considers whether a reduction in defendant's sentence is appropriate. As recommended by *United States v. Shaw,* 957 F.3d 734, 735 (7th Cir. 2020), the court considers defendant's pre-sentence and post-sentence conduct, including but not limited to the relevant factors in 18 U.S.C. § 3553(a), in deciding how to exercise its discretion in response to defendant's request.

Defendant has been incarcerated for 23 years, since he was approximately 20 years old. (DE # 504 at 2.) Defendant highlights the amount of time that has passed since his case began by noting that his trial began on September 10, 2001, the day before the terrorist attacks on locations in the United States including the World Trade Center.

3

(*Id.*) Defendant points out that at the time of his initial incarceration, smart phones had yet to become commonly used, Tom Brady had not yet started his first game in the NFL, and only one member of the Supreme Court at the time remains on the court to this day. Defendant further points out that the Northern District of Indiana had not yet implemented electronic filing as of 2001, and the undersigned was still a few years from assuming senior status.

Defendant draws attention to changes that have occurred in the legal landscape since 2001 as well. For example, in *United States v. Booker,* 543 U.S. 220 (2005), the Supreme Court held that the Sentencing Guidelines must be viewed as discretionary. Further, Congress passed the Fair Sentencing Act in 2010 and the First Step Act in 2018, in an effort to ameliorate some of the harsher and disproportionate results that occurred in drug cases. (DE # 504 at 4.)

Defendant argues that he has also changed significantly in the last 23 years. As he puts it, he embarked on a "self-improvement crusade" after his conviction, despite serving a life sentence for the first 14 years of incarceration. (*Id.*) Though he was denied a reduction in his sentence twice by Judge Lozano, defendant continued to maintain good behavior in prison and pursue self-development.

On March 22, 2023, the BOP transferred defendant to the Phoenix Residential Reentry Management program ("RMM"). (DE # 504 at 7.) He was placed on home confinement and electronic monitoring in the residence of his brother, where his mother also resides. Presently, he is complying with all rules related to house arrest. Defendant

4

works at a barber shop, and has enrolled in cosmetology school in the hopes of becoming a barber himself. The executive director of his cosmetology school reports that defendant is doing well academically and has a 99% attendance rate. (DE # 504 at 8.) Defendant's fiancé, Alaina Smith, who has known defendant since high school, has written a letter to the court describing defendant's character and desire for self-improvement. (*Id.*) The court has also considered a letter written by defendant himself, in which he expresses remorse for the past and hope for the future. (DE # 505-1.)

Post-sentencing conduct is "highly relevant" to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing. *Pepper v. United States*, 562 U.S. 476, 491 (2011). In this case, defendant's post-sentencing conduct – in particular, his behavior while on home confinement– demonstrates that he has made changes in his life since age 20 when he was convicted of the offenses at issue in this case.

This is not to say that defendant bears no responsibility for his conduct. It is not lost on the court that defendant was involved in a dangerous, large-scale drug conspiracy that no doubt contributed to the ruin of many lives and harmed his community. Nor can the court overlook the fact that, in a separate case, defendant attempted to help cover up the senseless and devastating murder of an innocent man, and has twice committed perjury. These facts are significant and have, in the past, given the court pause when considering whether defendant could reenter society without returning to a life of crime, violence, and deceit.

However, it is also noteworthy that defendant has served 23 years of his sentence without significant disciplinary issues. Most importantly, though, defendant has served a year of home detention without incident and with positive reviews from those charged with overseeing his progress. This is "highly relevant" post-sentencing conduct, *Pepper,* 562 U.S. at 491, and a substantial change in circumstances worth consideration. Further, defendant has but one-and-a-half years left to serve on his sentence, as his projected release date is December 20, 2025. *Find an inmate*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited May 30, 2024).

The court has carefully weighed all of the aforementioned facts, both new and old. Specifically, the court has considered the risk of defendant's recidivism and a return to dangerous, illegal conduct, as well as the nature of defendant's past offenses. The court has also considered that defendant was barely 20 years old at the time of his offenses, as well as the fact that defendant has been incarcerated for 23 years already. The court has considered how defendant has shown development over time and recent progress, particularly in the home detention environment. Defendant is 43 years of age and has an opportunity to live a life as a productive citizen.

In sum, for the foregoing reasons, defendant's motion for reduction of sentence pursuant to the First Step Act of 2018 is **GRANTED**. (DE # 504.) Defendant's sentence is reduced to 293 months on Counts 1 and 2, and 240 months on Count 3, with all terms running concurrently. This sentence is within the statutory boundaries imposed by Congress, and at the high end of the amended Guidelines range. If this term of

6

imprisonment is less than the amount of time defendant has already served, the term of imprisonment is reduced to time served. Except as provided herein, all provisions of the original and any amended judgments shall remain in effect.

This order is effective immediately; however, if this order reduces the defendant's sentence to time served, **RELEASE OF THE DEFENDANT IS STAYED** but only for the time period necessary for the Bureau of Prisons to accomplish the following tasks required by law, which period **MAY NOT EXCEED** ten (10) days from the date this order is entered on the docket: (1) to permit adequate time to collect DNA samples from the defendant (42 U.S.C. § 14135a); (2) to notify victims and witnesses (18 U.S.C. § 3771); (3) where applicable, to notify law enforcement officials of release of a violent offender and notify sex offender registration officials of release of a sex offender (18 U.S.C. § 4042 (b) & (c)); and (4) where applicable, to review defendant for possible civil commitment as a sexually dangerous person (18 U.S.C. § 4248).

**SO ORDERED.**

Date: June 4, 2024

                                        s/James T. Moody
                                        JUDGE JAMES T. MOODY
                                        UNITED STATES DISTRICT COURT